# Exhibit B



May 21, 2009

Official Committee of Unsecured Creditors
of Crucible Materials Corporation, et.al.
C/O Mr. Ronald S. Gellert
Eckert Seamans Cherin & Mellott LLC
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801

Dear Ronald:

I am pleased to confirm, on behalf of Huron Consulting Services LLC, ("Huron") our engagement to provide financial advisory services to the Official Committee of Unsecured Creditors (the "Committee") of Crucible Materials Corporation. (along with the debtor affiliates, collectively referred to as the "Debtor").

*Objectives and Scope*

We understand the engagement objectives and scope to include, without limitation, providing support, analysis and advice to the Committee, its counsel and any other professionals that the Committee may retain, with regard to Debtor's financial affairs, business plan and related forecasts, cash management, the analysis of Debtor's operations and assets, and the review, analysis and negotiation of Debtor's plan of reorganization. Huron will support the Committee in its negotiations in an effort to maximize recoveries for the Committee's constituents and to successfully conclude these bankruptcy proceedings. In performing this engagement, Huron will endeavor to avoid unnecessary cost and/or expense, as well as duplication with the services provided by any other advisor to the Committee.

*Our Services*

Our services may consist of the following:
a. The review and analysis of financial information prepared by the Debtor, its accountants and/or other financial advisors.
b. Monitoring and analysis of the Debtor's operations and financial condition, cash expenditures, court filings, business plans, operating forecasts, strategy, projected cash requirements and cash management.
c. Attendance at meetings of the Committee, the Debtor, their respective professionals, bankruptcy court hearings and participation in such other matters and on such occasions as the Committee may, from time-to-time request.
d. Review and analysis of any restructuring or plan or reorganization proposed by the Debtor or any other party, and the provision of assistance to the Committee in developing, structuring, evaluating and negotiating the terms and conditions of any restructuring or plan of reorganization, including analysis with respect to the value of securities, if any, that may be distributed to unsecured creditors under any such restructuring or plan.
e. Review and analysis of proposed transactions for which the Debtor seeks Court approval.
f. Review and analysis of and recommendations regarding any proposed disposition of assets of the Debtor, debtor-in-possession financing, proposed operational changes, and any expenditures out of the ordinary course of the Debtor's business.
g. Review of reports as to Debtor's business and its operations, including assessing the value of non-Debtor affiliates.
h. Analysis with respect to the pre-petition property, liabilities and financial condition (including analysis of potentially unencumbered assets) of the Debtor, and the transfers with and among Debtor's affiliates.

i. Support for any bankruptcy court proceedings necessary or appropriate to the maximization of recovery by the Committee's constituents, including expert witness or other testimony.
j. Investigation of cause of actions and other items as directed by you
k. Investigation of possible preference items
l. If requested by the Committee, assist with seeking prospective lenders, due diligence, transaction support, negotiations with prospective lenders and optimizing the terms of a prospective transaction.
m. Such other services as the Committee may, from time-to-time, deem necessary or appropriate.

We are a management consulting firm and not a CPA firm, and do not provide attest services, audits or other engagements in accordance with the AICPA Statements on Auditing Standards. We will not audit any financial statements or perform attest procedures with respect to information in conjunction with this engagement. Our services are not designed, nor should they be relied upon, to identify weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

*Fees and Expenses*

We will bill on an hourly basis based on the actual hours worked and the following hourly billing rates (which may be subject to adjustment from time to time):

| Title | Hourly Rate |
|---|---|
| Managing Director | $670-715 |
| Director | $540-610 |
| Manager | $400-450 |
| Associate | $325-350 |
| Analyst | $245-275 |

The cumulative average hourly billing rate will fall within a range of $375 - $425 per hour.

If Huron is successful in arranging alternative Debtor-In-Possession financing at the request of the Committee, the Committee agrees to negotiate a Success Fee that would be payable upon confirmation and closing of such financing. Any such agreement will be treated as an addendum to the existing engagement letter.

We will supply any additional information required by the Committee and by parties in interest pursuant to Section 327 and 330 of the Bankruptcy Code.

Out of pocket expenses (including travel, meals, communications, etc.) will be billed at the actual amounts incurred. Payment of Huron's invoices shall be subject to approval by the Bankruptcy Court, and we will bill in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the local rules and orders of the Bankruptcy Court, and a review for reasonableness, including any order establishing procedures for interim compensation and reimbursement of expenses of professionals (collectively, the "Compensation Procedures"). We understand that our invoice should be sent to:

> Official Committee of Unsecured Creditors of Crucible Materials, Inc., et.al.
> C/O Mr. Ronald S. Gellert
> Eckert Seamans Cherin & Mellott LLC
> 300 Delaware Avenue, Suite 1210
> Wilmington, DE 19801

Please remit payment via wire transfer to:

Bank of America, N.A.
Chicago, Illinois
Routing No. 0260-0959-3
Account Title: Huron Consulting Services LLC
Account Number: 5800297276
Comments: (Include Invoice Number to ensure proper credit)

Fee Applications will be filed by you on our behalf in order to gain payment by the Debtor of our invoices pursuant to Compensation Procedures. Notwithstanding such arrangement, Huron's duties hereunder run solely to the Committee, and Huron is not authorized to be, and will not purport to be, an agent of the Debtor for any purpose unless otherwise agreed to by the Committee, the Debtor and Huron.

*Business Terms*

The attached General Business Terms apply to this engagement.

\* \* \* \* \*

Please indicate your agreement with these terms by signing and returning the enclosed copy of this letter. This engagement and the enclosed terms will become effective upon our receipt of your signed copy. We appreciate the opportunity to serve you and look forward to working with you on this engagement.

Sincerely,

HURON CONSULTING SERVICES LLC

By: _[signature]_

Attachments:   General Business Terms

Acknowledged and Accepted:
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF CRUCIBLE MATERIALS CORPORATION, ET.AL.

By: _[signature]_
Title: CHAIRMAN - UNSECURED CREDITORS COMMITTEE
Date: 6/17/09

2227v1

Attachment to Engagement Letter dated May 21, 2009 between Huron Consulting Group and Official Committee of Unsecured Creditors Of Crucible Materials Corporation, et.al.

## GENERAL BUSINESS TERMS

These General Business Terms, together with the Engagement Letter (including any and all attachments, exhibits and schedules) constitute the entire understanding and agreement (the "Agreement") between us with respect to the services and deliverables described in the Engagement Letter. If there is a conflict between these General Business Terms and the terms of the Engagement Letter, these General Business Terms will govern, except to the extent the Engagement Letter explicitly refers to the conflicting term herein.

**1. Our Services and Deliverables** We will provide the services and furnish the deliverables (the "Services") as described in our Engagement Letter and any attachments thereto, as may be modified from time to time by mutual consent.

**2. Independent Contractor** We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our Services. We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, payroll and other applicable employee withholdings.

**3. Fees and Expenses** (a) Our fees and payment terms are set out in our Engagement Letter. Those fees do not include taxes and other governmental charges (which will be separately identified in our invoices.)

(b) You acknowledge that where out-of-town personnel are assigned to any project on a long-term basis (as defined from time to time in the applicable provisions of the Internal Revenue Code and related IRS regulations, and currently defined, under IRC Section 162, as a period of time reasonably expected to be greater than one year), the associated compensatory tax costs applied to out-of-town travel and living expenses also shall be calculated on an individual basis, summarized, and assessed to such personnel. In such cases, the expenses for which you shall reimburse us hereunder shall be deemed to include the estimated incremental compensatory tax costs associated with the out-of-town travel and living expenses of our personnel, including tax gross-ups. We shall use reasonable efforts to limit such expenses.

(c) We reserve the right to suspend Services if invoices are not timely paid, in which event we will not be liable for any resulting loss, damage or expense connected with such suspension.

**4. Taxes (a)** You will be responsible for and pay all applicable sales, use, excise, value added, services, consumption and other taxes and duties associated with our performance or your receipt of our Services, excluding taxes on our income generally.

(b) If you are required by the laws of any foreign tax jurisdiction to withhold income or profits taxes from our payment, then the amount payable by you upon which the withholding is based shall be paid to us net of such withholding. You shall pay any such withholding to the applicable tax authority. However, if after 120 days of the withholding, you do not provide us with official tax certificates documenting remittance of the taxes, you shall pay to us an amount equal to such withholding. The tax certificates shall be in a form sufficient to document qualification of the taxes for the foreign tax credit allowable against our corporation income tax.

**5. Confidentiality and Privacy** (a) With respect to any information supplied in connection with this engagement and designated by either of us as confidential, or which the other should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure ("Confidential Information"), the other agrees to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose. This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) lawfully disclosed by a third party, (iv) independently developed, (v) disclosed pursuant to legal requirement or order, or (vi) disclosed to taxing authorities or to representatives and advisors in connection with tax filings, reports, claims, audits and litigation.

(b) Confidential Information made available hereunder, including copies thereof, shall be returned or destroyed upon request by the disclosing party; provided that the receiving party may retain other archival copies for recordkeeping or quality assurance purposes and receiving party shall make no unauthorized use of such copies.

(c) We agree to use any personally identifiable information and data you provide us only for the purposes of this engagement and as you direct, and we will not be liable for any third-party claims related to such use. You agree to take necessary actions to ensure that you comply with applicable laws relating to privacy and/or data protection, and acknowledge that we are not providing legal advice on compliance with the privacy and/or data protection laws of any country or jurisdiction.

(d) We may also mention your name and provide a general description of the engagement in our client lists or marketing materials.

**6. Our Deliverables and Your License** Upon full and final payment of all amounts due us in connection with this engagement, all right, title and interest in the deliverables set out in our Engagement Letter will become your sole and exclusive property, except as set forth below. We will retain sole and exclusive ownership of all right, title and interest in our work papers, proprietary information, processes, methodologies, know how and software ("Huron Property"), including such information as existed prior to the delivery of our Services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of Services for you. To the extent our deliverables to you contain Huron Property, upon full and final payment of all amounts due us in connection with this engagement, we grant you a non-exclusive, non-assignable, royalty-free, perpetual license to use it in connection with the deliverables and the subject of the engagement and for no other or further use without our express, prior written consent. If our deliverables are subject to any third party rights in software or intellectual property, we will notify you of such rights. Our deliverables are to be used solely for the purposes intended by this engagement and may not be disclosed, published or used in whole or in part for any other purpose.

**7. Your Responsibilities.** To the extent applicable, you will cooperate in providing us with office space, equipment, data and access to your personnel as necessary to perform the Services. You shall provide reliable, accurate and complete information necessary for us to adequately perform the Services and will promptly notify us of any material changes in any information previously provided. You acknowledge that we are not responsible for independently verifying the truth or accuracy of any information supplied to us by or on behalf of you.

**8. Our Warranty** We warrant that our Services will be performed with reasonable care in a diligent and competent manner. Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 10 days after the Services are performed or delivered. The notice will specify and detail the non-conformance and we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance.

We do not warrant and are not responsible for any third party products or services. Your sole and exclusive rights and remedies with respect to any third party products or services are against the third party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, ALL OF WHICH ARE HEREBY DISCLAIMED.

**9. Liability and Indemnification** (a) This engagement is not intended to shift risk normally borne by you to us. To the fullest extent permitted under applicable law, you agree to indemnify and hold us and our personnel, agents and contractors harmless against all costs, fees, expenses, damages, and liabilities (including reasonable defense costs and legal fees), associated with any legal proceeding or other claim brought against us by a third party, including a subpoena or court order, arising from or relating to any Services that you use or disclose, or this engagement generally. This indemnity shall not apply to the extent a claim arises out of our gross negligence or willful misconduct, as finally adjudicated by a finder of fact.

(b) We will not be liable for any special, consequential, incidental, indirect or exemplary damages or loss (nor any lost profits, savings or business opportunity). Further, our liability relating to this engagement will in no event

exceed an amount equal to the fees (excluding taxes and expenses) we receive from you for the portion of the engagement giving rise to such liability.

(c) Neither of us will be liable for any delays or failures in performance due to circumstances beyond our reasonable control.

**10. Non-Solicitation** During the term of this engagement, and for a period of one year following its expiration or termination, you will not directly or indirectly solicit, employ or otherwise engage any of our employees (including former employees) or contractors who were involved in the engagement.

**11. Termination**

(a) Termination for Convenience. Either party may terminate this Agreement for convenience at any time on 30 days' prior written notice to the other.

(b) Termination for Breach. Either party may terminate this Agreement for breach if, within 15 days' notice, the breaching party fails to cure a material breach of this Agreement.

(c) To the extent you terminate this Agreement for convenience, you will pay us for all Services rendered, effort expended, expenses incurred, contingent fees (if any), or commitments made by us to the effective date of termination. To the extent you terminate this Agreement for breach, you will pay us for all conforming Services rendered and reasonable expenses incurred by us to the effective date of the termination.

(d) Further, we reserve the right to terminate this Agreement at any time, upon providing written notice to you, if conflicts of interest arise or become known to us that, in our sole judgment, would impair our ability to perform the Services objectively.

(e) The terms of this Agreement which relate to confidentiality, ownership and use, limitations of liability and indemnification, non-solicitation and payment obligations shall survive its expiration or termination.

**12. General** (a) This Agreement supersedes all prior oral and written communications between us, and may be amended, modified or changed only in a writing when signed by both parties.

(b) No term of this Agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c) We each acknowledge that we may correspond or convey documentation via Internet e-mail and that neither party has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, neither party will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(d) This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without giving effect to conflict of law rules. The parties hereto agree that any and all disputes or claims arising hereunder shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Any arbitration will be conducted in Chicago, Illinois. Any arbitration award may be entered in and enforced by any court having jurisdiction thereof, and the parties consent and commit themselves to the jurisdiction of the courts of the State of Illinois for purposes of any enforcement of any arbitration award. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

(e) If any portion of this Agreement is found invalid, such finding shall not affect the enforceability of the remainder hereof, and such portion shall be revised to reflect our mutual intention.

(f) This Agreement shall not provide third parties with any remedy, cause, liability, reimbursement, claim of action or other right in law or in equity for any matter governed by or subject to the provisions of this Agreement

* * *