## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CRUCIBLE MATERIALS CORPORATION, *et al.*,[1] | ) Case No. 09-11582 (MFW) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Hearing Date: TBD** |
| | ) **Obj. Deadline: TBD** |
| | ) |

## DEBTORS' MOTION FOR ORDERS: (A)(I) APPROVING AUCTION PROCEDURES AND RELATED BID PROTECTIONS; (II) SCHEDULING A HEARING TO CONSIDER THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; AND (B) AUTHORIZING AND APPROVING (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (II) THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

Crucible Materials Corporation ("Crucible") and Crucible Development Corporation

("CDC"), debtors and debtors in possession (collectively, the "Debtors"), hereby submit this

motion (the "Motion"), pursuant to sections 105(a), 363, 365 and 503(b) of title 11 of the United

States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-

1(b) and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of orders:

(a)(i) approving the bid procedures attached hereto as **Exhibit A** (the "Sales Procedures") with

respect to the proposed sale of substantially all of the Debtors' assets (the "Assets") free and

clear of liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy

Code, (ii) approving the payment of a breakup fee and reimbursement of expenses in connection

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Crucible Materials Corporation (9229); Crucible Development Corporation (3475). The Debtors' headquarters is located at 575 State Fair Boulevard, Syracuse, NY 13209.

therewith, (iii) scheduling a hearing to consider the Debtors' request for authorization to sell substantially all of their Assets out of the ordinary course of business, and (iv) approving the form and manner of notice of the auction and sale hearings, and (b)(i) approving the sale of Crucible's compaction and research divisions (the "Compaction and Research Divisions") to Carpenter Technology Corporation ("Carpenter") or the other Successful Purchaser (as defined below); (ii) approving the sale of all of the Debtors' other assets (collectively, the "Remaining Assets") to the Successful Purchaser, if any, as determined at the Auction; (iii) authorizing the assumption and assignment of certain executory contracts and unexpired leases to Carpenter or the Successful Purchaser(s), as appropriate; and (iv) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a), 363(b), (f), (m) and (n), 365 and 503(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 7004 and 9014 and Local Rules 2002-1 and 6004-1.

## Background

4. On May 6, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under title 11, chapter 11 of the United States Code thereby commencing these chapter 11 cases. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2

5.    Crucible is an employee-owned company, and has been a leader and innovator in the specialty metals industry for more than one hundred years, manufacturing stainless steel, alloy steel, tool steel, and valve steel for use in the automotive, aerospace, petrochemical, and other industries.  Crucible also maintains a significant research division, which is devoted to advanced metallurgical research and the development of new products and processes and the continuous improvement of current ones.

6.    CDC is a wholly-owned subsidiary of Crucible, which owns certain real property utilized in the operations of Crucible's business.

7.    No trustee or examiner has been appointed in these chapter 11 cases.

8.    On May 20, 2009, the Office of the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee").

## The Debtors' Pre-Petition and Post-Petition Financing

9.    Prior to the Petition Date, Wachovia Capital Finance Corporation (New England) ("Wachovia," or the "Agent"), as agent for the Debtors' pre-petition lenders (collectively, the "Lenders"), made certain loans and other financial accommodations to Crucible pursuant to the terms and conditions set forth in that certain Loan and Security Agreement, dated August 5, 2004 (as amended, the "Loan Agreement"), by and between Crucible, Crusteel Limited, CDC, Wachovia and the Lenders.

10.    On the Petition Date, the Debtors and their Pre-Petition Lenders entered into, and sought Court approval for, an amendment to the Loan Agreement, pursuant to which the Lenders agreed to extend postpetition debtor in possession financing to the Debtors.

3

11. On June 8, 2009, the Court entered a Final Order (A) Authorizing Debtors to Obtain Post-Petition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 364(c); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (C) Authorizing Debtors to Enter Into Agreements With Wachovia Capital Finance Corporation (New England), As Agent for Itself and Certain Other Lenders (Docket No. 152) (the "DIP Order").

12. Under the terms of the Loan Agreement, the Debtors were initially obligated to identify a stalking horse bidder and obtain entry of a sale procedures order providing for the sale of substantially all of their Assets no later than July 6, 2009.

13. The Debtors have obtained several extensions of that deadline from the Lenders, the most recent of which expired on August 14, 2009.

14. Despite their best efforts, the Debtors have not been able to identify a stalking horse for, or negotiate an asset purchase agreement covering, substantially all of their Assets. Also, while negotiations concerning an amendment of the Loan Agreement to remedy this default are ongoing, the Debtors are presently in a technical state of default under the Loan Agreement, though the Lenders have not indicated any immediate intention to cease lending to the Debtors or otherwise exercise their remedies under the Loan Agreement.

15. Even prior to this default, the Debtors had already determined that the sale of substantially all of their assets offered the best available hope for maximizing the value of the estate.

16. In light of all the circumstances, including the uncertainty regarding their ability to obtain continued postpetition financing for their operations, the Debtors have decided, in a carefully considered exercise of their sound business judgment, to enter into an Asset Purchase

4

Agreement dated August 21, 2009 (the "Carpenter APA") with Carpenter, which provides for the sale of Crucible's Compaction and Research Divisions, subject to any higher and better offers that might be submitted prior to the Sale Hearing. A copy of the Carpenter APA is annexed hereto as **Exhibit B**.

17. While the Debtors have not received any firm offers for the Remaining Assets – i.e., all of the Debtors assets, which are not subject to the Carpenter APA -- they have received a number of serious expressions of interest and believe that the value of the Remaining Assets can best be maximized through an auction and sale of the Remaining Assets to be held at the same time as the auction sale with respect to the Compaction and Research Divisions, subject to the Debtors' right to withdraw any or all of their Assets, including, without limitation, the Compaction and Research Divisions, in the event the Debtors do not receive any acceptable offers for the Remaining Assets.

18. To be clear, the Debtors do not intend to conduct a firesale liquidation of their Remaining Assets. Instead, the Debtors simply wish to establish an orderly process pursuant to which, if acceptable bids are received for all or some substantial portion of the Remaining Assets, such bids can be considered by the Debtors and, if appropriate, brought before the Court for approval in an expedited time frame in order to maximize the value of the Debtors' estates.

## The Sale Process

19. Beginning in May 2009 the Debtors sought to identify potential purchasers for the Debtors' Assets, either in whole or in part, and, with the help of Duff & Phelps Securities, LLC, the Debtors' investment bankers and financial advisers, contacted approximately 236 potential purchasers (the "Contact Parties") to solicit interest in purchasing some or all of the Debtors' Assets.

5

20.     Of the 236 parties contacted by the Debtors, 58 parties signed and returned confidentiality agreements and were provided varying amounts of additional information, including an information memorandum, financial model, and access to an online data room.

21.     Of the 58 parties that signed and returned confidentiality agreements with the Debtors, 9 parties expressed significant interest in procuring some or all of the Assets and participated in more substantive due diligence of the Debtors' business, ultimately cultimating in the Debtors' receipt of 9 letters of intent or other written expressions of interest.

22.     After careful consideration of all the offers and expressions of interest received, and extensive negotiations with various potential purchasers, Crucible has decided to enter into the Carpenter APA with respect to its Compaction and Research Divisions. The Debtors have not, as yet, been able to finalize an acceptable deal with respect to the Remaining Assets, but hope to do so at or prior to the Auction described below.

## The Carpenter APA

23.     Pursuant to the terms of the Carpenter APA, Crucible seeks to sell its Compaction and Research Divisions to Carpenter, subject to higher and better offers of another successful bidder at the Auction (the party or parties that submits the highest and best bid(s) as determined by the Debtors is referred to herein as the "Successful Purchaser") and to assume and assign certain executory contracts and unexpired leases (the "Assigned Contracts") to the Successful Purchaser(s).

24.     Pursuant to the terms of the APA, Carpenter will acquire the Compaction and Research Divisions free and clear of all liens, claims, interests and encumbrances pursuant to section 365(f) of the Bankruptcy Code, with such liens, claims, interests and encumbrances to attach to the proceeds of the sale.

6

25. The most salient terms of the APA are summarized below:[2]

    (a) **Purchase Price** (Carpenter APA, § 1.3(a)) - $20 million, subject to adjustments as set forth in the Carpenter APA

    (b) **Good Faith Deposit** (Carpenter APA, § 1.3(b)) – $1 million

    (c) **Assets** (Carpenter APA, § 1.1(a)) – substantially all of the assets used in connection with the Compaction and Research Divisions

    (d) **Sale Free and Clear of Liens, Claims and Interests, Including Successor Liabilities** (Sale Order, Finding T and ¶ 7) – The sale of the Compaction and Research Divisions to Carpenter is to be free and clear of liens, claims and interests, including Successor Liabilities.

    (e) **Excluded Assets** (Carpenter APA, § 1.1(b)) – cash and cash equivalents, assets used in connection with the Debtors' other operations, assets associated with the Debtors' pension and other benefit plans, causes of action under chapter 5 of the Bankruptcy Code

    (f) **Assumed Liabilities** (Carpenter APA, § 1.2(a)) – cure payments owed with respect to assumed contracts, all post-closing liabilities of the Compaction and Research Divisions.

    (g) **Break-Up Fee / Expense Reimbursement** (Carpenter APA, § 9.3) – breakup fee equal to 3% of the Purchase Price ($600,000.00) plus reimbursement of documented expenses of up to an additional $300,000.00.

    (h) **Closing** (Carpenter APA, § 9.1) – No later than October 31, 2009

    (i) **Representations and Warranties** – Customary representations and warranties regarding organization, authority, consents, contracts, employees, real property, compliance with laws, insurance, title, receivables, inventory, brokers, litigation, affiliated transactions, etc…

## Sales Procedures

26. The Debtors' proposed Sales Procedures, which are annexed hereto as Exhibit A are designed to allow the Debtors to facilitate an orderly sale of substantially all of their Assets

---

[2] This summary of the Carpenter APA is not an exhaustive description of the terms and conditions of the Carpenter APA and is qualified in its entirety by reference to the complete Carpenter APA attached hereto as Exhibit B, which shall control in the event of any discrepancies.

583175.1 8/24/09

through an auction process, with Carpenter serving as the stalking horse bidder for the

Compaction and Research Divisions, and are summarized below:[3]

a.  **Assets To Be Sold** – The Debtors intend to sell all, or substantially all, of their Assets in accordance with these procedures, and invite interested parties to submit bids for all, or any identifiable part, of their Assets in accordance with these Sale Procedures, including without limitation, any competing bids for the Assets covered by the Carpenter APA.

b.  **Data Room and Information Access** -- Any potential bidders that express an interest in obtaining information relevant to the Assets for the purposes of conducting a due diligence investigation, will be provided access to certain relevant books and materials, significant agreements and other financial and/or operational information upon executing a valid confidentiality agreement with the Debtors, which can be found at the Debtors' notice website (http://chapter11.epiqsystems.com/crucible).

c.  **Qualified Bidders** – Only "Qualified Bidders" shall be eligible to participate in the Auction. To be deemed a "Qualified Bidder," each potential bidder must submit to the Debtors and to the Creditors' Committee: (1) a binding written offer to purchase all, or some portion of, of the Assets; (2) an executed confidentiality agreement in a form and substance acceptable to the Debtors and (3) sufficient financial and other information that will allow the Debtors to make a reasonable and informed determination regarding the bidder's financial ability to consummate the transactions contemplated by the asset purchase agreement proposed by such Qualified Bidder.

d.  **Due Diligence Access** – The Debtors shall comply with reasonable requests for due diligence similar in kind to the due diligence provided to the Stalking Horse. The Debtors shall only provide due diligence up until the Bid Deadline (defined below).

e.  **Qualified Bids** - To constitute a "Qualified Bid," a bid must meet the following conditions:

   i.  the bidder must submit a clean, fully executed and binding asset purchase agreement (the "Modified APA"), and, to the extent the Modified APA relates to the Assets covered by the Carpenter APA, the bidder must also provide a blackline marked to show changes against the Carpenter APA;

   ii.  the bid must provide that the entire purchase price will be paid in cash at closing;

---

[3]    This summary is intended as a convenience only, and is qualified in its entirety by reference to the complete Sale Procedures attached hereto as Exhibit A which shall control in the event of any discrepancies.

8

iii.     to the extent the bid relates to the Compaction and Research Divisions, the bid must offer to pay a purchase price higher than the "Purchase Price" offered by Carpenter in the Carpenter APA by the aggregate amount of the Break-Up Fee and Expense Reimbursement plus $100,000.00 (the "Initial Bid Increment") and the total aggregate amount of the bid must be not less than $21,000,000.00 (the "Initial Minimum Overbid").

iv.     the bidder's offer must be irrevocable until the closing of the purchase of the Assets in the event that the bidder is the Successful Purchaser (defined below);

v.     the bidder's offer must identify each and every executory contract and unexpired lease that the bidder proposes to have assigned to it as a condition to closing;

vi.     the bidder must provide Financial Information to the Debtors in a form that is satisfactory to the Debtors, so as to allow the Debtors to file and serve a schedule listing the proposed cure amounts (the "Cure Schedule") and any information relating to adequate assurance of future performance on non-debtor counterparties to any Assigned Contracts with the Sale Hearing Notice;

vii.     the bidder's offer must not include any due diligence or financing requirements of any kind;

viii.     the bidder shall not be entitled to any break-up fee, expense reimbursement or other similar payment;

ix.     the bidder must identify any party or entity that will be participating in its bid on the Assets, together with the complete terms of such participation;

x.     the bidder must submit evidence that the submission, execution, delivery and closing of the Modified APA has been authorized and approved by the bidder's board of directors (or similar corporate governing body);

xi.     the bidder's offer must be submitted with a cash deposit equal to five percent (5%) of the proposed purchase price (the "Good Faith Deposit")[4] to be held in escrow by a mutually agreeable escrow agent; and

---

[4]     As set forth in ¶ 30 below, if a bidder is the Next Highest Bidder (defined below) at the Auction, the Next Highest Bidder's Good Faith Deposit shall be held in the event that the Successful Purchaser is unable to close the Sale contemplated by the Successful Bid. Once the Sale closes with the Successful Purchaser, the Next Highest Bidder's Good Faith Deposit shall be returned to the Next Highest Bidder.

9

583175.1 8/24/09

xii. the bidder's offer must be accompanied by a clean and blacklined versions of a form of sale order that the bidders would want the Debtors to submit to the bankruptcy court for approval at the Sale Hearing. The blacklined version of the proposed sale order shall show the differences between the proposed sale order submitted by the Debtors and the proposed sale order being submitted by the bidder.

Notwithstanding the foregoing, the Debtors shall have the right to waive any of the aforementioned requirements and deem a bid a Qualifying Bid if the Debtors find that allowing such bid will aid in maximizing the value to be gained from the sale to the Debtors' estates.

f. **Bid Deadline** – All Qualified Bids must be submitted in writing by no later than September 17, 2009 at 5:00 p.m. (prevailing eastern time) to:

i. **Debtors' Counsel:**

K&L Gates LLP
599 Lexington Avenue
New York, NY 10022
Attn: Jeffrey N. Rich, Esq. and Eric T. Moser, Esq.
Tel. No. (212) 536-4097
Fax No. (212) 536-3901
E-mail: Jeff.Rich@KLGates.com and Eric.Moser@KLGates.com

-and-

K&L GATES LLP
David A. Murdoch
535 Smithfield Street
Pittsburgh, PA 15222
Tel. No. (412) 355-6500
Fax No. (412) 355-6501
E-mail: David.Murdoch@KLGates.com

-and-

SAUL EWING LLP
Mark Minuti
222 Delaware Avenue, Suite 1200
\Wilmington, Delaware 19899
Tel. No.: (302) 421-6800
Fax No. (302) 421-6813
E-mail: MMinuti@saul.com

## ii. **Official Committee of Unsecured Creditors**

ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801
Attn: Ronald S. Gellert, Esq., Karen Lee Turner, Esq. and
Tara L. Lattomus, Esq.
Tel. No. (302) 425-0430
Fax No. (302) 425-0432

## iii. **Debtors' Financial Advisors**

Duff & Phelps Securities LLC
311 South Wacker Drive
Suite 4200
Chicago, IL 60606
Attn: Christopher J. Mercier and Andrew W. Chidester

## iv. **Counsel to Agent to the Debtors' Post-Petition Secured Lenders**

Otterbourg, Steindler, Houston & Rosen, P.C.
230 Park Avenue
New York, NY 10169
Attn: Daniel F. Fiorillo, Esq.

-and-

Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Attn: Mark D. Collins, Esq.

g.     **No Competing Qualifying Bids** – If the Debtors do not receive at least one (1) or more Qualifying Bid(s), in addition to the bid of the Stalking Horse, on or before the Bid Deadline, the Debtors will not hold the Auction.

h.     **Auction** – If, on or before the Bid Deadline, the Debtors receive at least one (1) additional Qualified Bid for the Compaction and Research Divisions, or more than one (1) Qualifying Bid for all or a portion of the Remaining Assets, the Debtors shall hold an Auction unless the Debtors, in consultation with their financial advisors, the Creditors' Committee and the Agent, decide in the exercise of their sound business judgment, that all of the Qualified Bids submitted with respect to any particular portion of the Debtors'

11

Assets are unacceptable and that canceling the Auction would be in the best interest of the Debtors' creditors and estates.

## Auction Notice

27.     Within three (3) business days after the entry of the Sales Procedures Order, the Debtors will serve the Motion, the Carpenter APA, the Sales Procedures, the Sales Procedures Order and an Auction Notice, substantially in the form annexed hereto as **Exhibit C**, on the following parties (collectively, the "Auction Notice Parties") by first-class mail postage pre-paid: (a) the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: David Klauder, Esq. (b) counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee"), Eckert Seamans Cherin & Mellott, LLC, 300 Delaware Avenue, Suite 1210, Wilmington, DE 19801, Attn: Ronald S. Gellert, Esq., Karen Lee Turner, Esq. and Tara L. Lattomus, Esq., (c) all parties known to have a lien, claim, encumbrance or interest on any of the Assets proposed to be sold, (d) counsel to the agent for the Debtors' pre-petition and post-petition lenders, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, NY 10169, Attn: Daniel F. Fiorillo, Esq. and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Mark D. Collins, Esq., (e) all parties who have specifically requested notice pursuant to Bankruptcy Rule 2002, (f) counsel to Carpenter, Carpenter Technology Corporation, P.O. Box 14662, Reading, PA 19612-4662, Attn: Jed S. Freeman, Esq. and Duane Morris, LLP, 470 Atlantic Avenue, Boston, MA 02210, Attn: Paul D. Moore, Esq., (g) all Contact Parties; (h) all counterparties to contracts that the Debtors propose to assume and assign to Carpenter pursuant to the Carpenter APA; (i) the United States Attorney's Office for the District of Delaware; (j) the Internal Revenue Service; (k) all applicable federal, state, and local regulatory or taxing authorities; (l) the Pension Benefit Guaranty Corporation; (m) the Environmental Protection Agency; (n) any applicable

583175.1 8/24/09

state environmental agencies; (o) the United States Department of Justice; (p) the Attorneys General of the States where the Purchased Assets are located; (q) all litigants or known potential litigants against the Debtors; and (r) all other known creditors of the Debtors.

## Auction Procedures

28.    The Debtors propose that the Auction, if any, will occur on September 21, 2009 at the offices of K&L Gates LLP, 599 Lexington Avenue, New York, New York 10022, or such other location that may be determined by the Debtors as set forth in a notice to be distributed to all Qualifying Bidders.

29.    The Debtors further propose that the Auction be governed by the following procedures:

> i.    **Attendance.** Only representatives of the Debtor, the Creditors' Committee, the Office of the United States Trustee, the Debtors' secured lenders, and any Qualified Bidders that have submitted Qualified Bids shall be permitted to attend the Auction;
>
> ii.    **Participation.**    Only Qualified Bidders will be allowed to participate in the Auction and to submit subsequent bids at the Auction;
>
> iii.    **Authorized Representatives.** Qualified Bidders must appear in person at the Auction or through a duly authorized representative;
>
> iv.    **Notification of Highest Initial Bid.**    The Debtors will notify Qualified Bidders of the amount of the highest bid (the "Initial Highest Bid") for the Compaction and Research Divisions and/or the Remaining Assets, as appropriate, prior to the Auction;
>
> v.    **Minimum Bid Increments**.    Qualified Bidders must submit bids in minimum increments of at least $50,000.00 (the "Bid Increment") higher than the Initial Highest Bid[5] and each subsequent bid;
>
> vi.    **APA Revisions**.    Qualified Bidders will have the opportunity to revise their Modified APAs at the Auction;

---

[5]    Notwithstanding the minimum bid increments, a Qualified Bid for the Compaction and Research Divisions must be at least $21,000,000, representing the $20,000,000 Purchase Price payable under the Carpenter APA, together with the $900,000 Breakup Fee and Expense Reimbursement payable under the Carpenter APA, and a $100,000 minimum overbid.

vii.    **Auction Process**

> (i)     During the Auction, each Qualified Bidder will be informed of the terms of the previous bid;

> (ii)    The Auction will continue until only one (1) bid remains as the highest and best offer (the "Successful Bid") for the Assets with respect to which the Auction was held, in each instance as determined by the Debtors in their sole discretion;

> (iii)   When bidding at the Auction, Carpenter shall receive a "credit" in the amount of the Breakup Fee;

> (iv)    The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are not inconsistent with these Sales Procedures.

> (v)     The bidder(s) that submits the Successful Bid shall be the "Successful Purchaser(s)".

viii.   **Execution of Successful Bid**.   Within one (1) business day after concluding the Auction, the Successful Purchaser(s) must complete and execute all agreements, contracts, instruments or other documents setting forth the terms and conditions upon which the Successful Bid(s) was made.

ix.     **Good Faith Deposit.**   Upon the closing of the Sale, the Debtors shall promptly be entitled to cash and/or deposit the Good Faith Deposit held in escrow and the Successful Purchaser will be required to promptly pay the balance of the Successful Bid to the Debtors.

x.      **Backup Bidder.**   If, for any reason, the Successful Purchaser is unable to close the Sale contemplated by the Successful Bid, then the Debtors shall be authorized to close the Sale with the Qualified Bidder that submitted the next highest bid (the "Next Highest Bidder") without notice to any parties or additional order of the Court.

30.     **Return of Good Faith Deposits** -- The Good Faith Deposits submitted by all

Qualified Bidders, other than the Successful Purchaser or the Next Highest Bidder (in the event

that the Successful Purchaser is unable to close the Sale), shall be returned to such Qualified

Bidders within three (3) business days after the Auction.

14

31.     **Reservation of Rights** – The Debtors reserve their right to: (i) decide which bidders constitute Qualified Bidders; (ii) decide which bids constitute Qualified Bids; (iii) choose which Qualified Bid is the highest or best offer; and (iv) reject any bid that does not conform to the requirements of these Sales Procedures or is otherwise inadequate.

32.     **Jurisdiction** – The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute arising from, or related to, the Sale of the Assets, the Sales Procedures, the Sale Hearing, the Auction, the Carpenter APA, and any Modified APA.

## Sale Hearing Notice

33.     As soon as practicable, but in any event no later than two (2) business days following the determination of the identity of the Successful Bidder(s), the Debtors will file and serve: (i) a Sale Hearing Notice, substantially in the form annexed hereto as **Exhibit D**, identifying the Successful Purchaser(s), (ii) a schedule (the "Cure Schedule") listing the proposed cure amounts for each executory contract or unexpired lease (the "Assigned Contracts") which the Successful Purchaser(s) (other than Carpenter) seeks to have assigned to it, and (iii) a proposed form of Sale Order, on: (a) the Auction Notice Parties, (b) all counterparties to the Assigned Contracts, and (c) all known creditors of the Debtors (collectively, the "Sale Hearing Notice Parties").

34.     The Cure Schedule with respect to the Carpenter APA shall be filed at or prior to the hearing on this Motion, and will be served on the Auction Notice Parties at the same time as the Motion, the Carpenter APA, the Sales Procedures, the Sales Procedures Order and the Auction Notice, as described by paragraph 27 above.

15

## Assumption and Assignment of Certain Executory Contracts and Unexpired Leases

35.     Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors request authority to assume and assign to Carpenter or the Successful Purchaser(s), certain Assigned Contracts, to be effective upon closing.

36.     Any Assigned Contracts to be assumed and assigned to a Successful Purchaser other than Carpenter will be included in a schedule accompanying the Modified APAs to be submitted by such potential bidders and also attached to the Sale Hearing Notice that will be sent to the Sale Hearing Notice Parties following the Auction.

37.     In order to facilitate a prompt closing with the Successful Purchaser(s), and to resolve any objections that may be raised with respect to the assumption and assignment of particular Assigned Contracts, the Debtors request that the Court approve the following assumption and assignment procedures (the "Assumption and Assignment Procedures"):

(a)     As set forth in the Sales Procedures, any bidders that require the assumption and assignment of certain executory contracts and/or unexpired leases to the bidder shall identify such Assigned Contracts, and shall also submit evidence of such bidder's ability to provide adequate assurance of future performance under these Assigned Contracts under 11 U.S.C. §365.

(b)     The Debtors shall file and serve a schedule (the "Cure Schedule") listing the proposed cure amounts for each Assigned Contract which the Debtors proposed to assume and assign to Carpenter at the same time they serve the Auction Notice.

(c)     Following any Auction, or, if no Auction takes place, once the Bid Deadline expires, the Debtors shall file a supplemental Cure Schedule listing the proposed cure amounts for each Assigned Contract which the Debtors propose to assume and assign to the Successful Purchaser, the identity of the Successful Purchaser(s), and adequate assurance of future performance under the Assigned Contracts. This Cure Schedule shall be attached to the Sale Hearing Notice and, along with a proposed form of Sale Order, will be served on the Sale Hearing Notice Parties.

(d)     Any counterparties to the Assigned Contracts that object to the assumption and assignment of their Assigned Contract to the Successful Purchaser, either on the basis of the proposed cure amount set forth in the Cure Schedule, adequate assurance of future performance by the Successful Purchaser, or for any other reason, shall file such objection (an "Assumption Objection") with the Court and serve such objection on the:

16

(a) the Debtors' counsel; (b) counsel to the Creditors' Committee; and (c) the U.S. Trustee for the District of Delaware (collectively, the "Assumption Objection Parties"), so that the Assumption Objection is received within fourteen (14) days after the service of the relevant Cure Schedule (the "Assumption Objection Deadline").

(e)     If any counterparty to an Assigned Contract fails to file a timely Assumption Objection to the assumption and assignment of their particular Assigned Contract on or before the Assumption Objection Deadline, the cure amounts proposed by the Debtors, as set forth on the Cure Schedule to be filed with and attached to the Sale Hearing Notice, shall be binding on the non-debtor counterparty to such Assigned Contract and shall be a final determination of the aggregate cure amounts to be paid by the Successful Purchaser in connection with the assumption and assignment of the specified Assigned Contract to the Successful Purchaser. Additionally, any non-debtor counterparty to an Assigned Contract that fails to timely file an objection by the Assumption Objection Deadline shall be forever estopped and enjoined from objecting to the assumption and assignment of the Assigned Contract to the Successful Purchaser.

(f)     If a counterparty to an Assigned Contract timely files an Assumption Objection to the assumption and assignment of its Assigned Contract to the Successful Purchaser by the Assumption Objection Deadline, the Debtors and the counterparty to the Assigned Contract will seek to consensually resolve such Assumption Objection within a reasonable amount of time, but, in any event, no later than the date of the Sale Hearing. If the objecting counterparty and the Debtors are unable to consensually resolve the Assumption Objection prior to the Sale Hearing, the Court shall resolve the objection at the Sale Hearing, or at a later date to be determined by the Court.

(g)     The Successful Purchaser shall pay all undisputed cure amounts to the appropriate non-debtor counterparties to the Assigned Contracts within ten (10) days after closing.

(h)     If the Closing occurs prior to the resolution of any Assumption Objections relating solely to the proposed cure amounts associated with an Assigned Contract, and such Assumption Objections have been timely filed by the non-debtor counterparties to the Assigned Contracts on or before the Assumption Objection Deadline, the Successful Purchaser shall pay the undisputed portion of the cure amount to the counterparty within ten (10) days of the closing and shall place the remaining disputed portion of the cure amount claimed by such objecting counterparty in escrow (the "Cure Reserve"). An Assumption Objection based solely on the proposed cure amount of any Assigned Contract shall not delay the Closing and the Assigned Contract which is the subject of any such objection shall be assumed and assigned to the Successful Purchaser pending final resolution of the cure amount by this Court.

## Objections to the Sale Motion

38.     Pursuant to Bankruptcy Rule 9014, the Debtors request that objections to the Sale

Motion: (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules of this Court;

17

(c) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware; Third Floor, 824 Market Street, Wilmington, Delaware 19801 on or before September 18, 2009 at 5:00 p.m. (prevailing eastern time) (the "Objection Deadline"); and (d) be served so as to be received by the following parties on or before the Objection Deadline: (i) Counsel for the Debtors; (ii) Counsel for the Creditors' Committee; (iii) Counsel to the Lenders; and (iv) Office of the United States Trustee.

## Basis for the Relief Requested

### A. The Sales Procedures are Reasonable, Appropriate and Will Maximize the Value of the Debtors' Assets

39. The Debtors submit that the Sales Procedures, including the Assumption and Assignment Procedures, are reasonable and appropriate and will assist the Debtors in maximizing the value of the Assets for the benefit of the Debtors' estates and creditors.

40. The Sales Procedures are designed to create an orderly, but competitive, bidding process that will encourage potential purchasers to submit competing bids and participate in the Auction.

41. While the proposed time between entry of the Sale Procedures Order and the Auction is relatively brief, the Debtors submit that such expedition is appropriate in this case because: (i) the Debtors are already in default under the Loan Agreement, and their continued access to financing is uncertain; and (ii) the Assets have already been subjected to an extensive marketing process.

42. Under the circumstances, the Debtors respectfully submit that the Sale Procedures are reasonable, will maximize the value of the Debtors' estates, and should be approved.

18

**B.    The Breakup Fee and Expense Reimbursement Provisions of the Carpenter APA Are Reasonable and Should Be Approved**

43.     The Break-Up Fee and Expense Reimbursement provisions of the Carpenter APA were necessary to induce Carpenter to agree to serve as the stalking horse bidder. Under the circumstances, the Debtors respectfully submit that the payment of those fees, totaling up to $900,000 or 4.5% of the purchase price in the aggregate, are reasonable and necessary expenses that will enable the Debtors to obtain the highest and best price possible for the Assets.

44.     Accordingly, the Debtors request that the Break-Up Fee and Expense Reimbursement be paid, if and when they become payable under the terms of the Carpenter APA, as an allowed administrative expense claim pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

45.     Under the law of this circuit, in order for a break-up fee or expense reimbursement to be allowable under section 503(b), the Debtors must show that the break-up fee and expense reimbursement were actually necessary to preserve the value of the estate. In re O'Brien Envt'l Energy, Inc., 181 F.3d 527, 535 (3d Cir. 1999); In re Reliant Energy Channelview, LP, 403 B.R. 308, 311 (D. Del. 2009); In re Beth Israel Hospital Ass'n of Passaic, No. 06-16186 (NLW), 2007 WL 2049881, at *12 (Bankr. D.N.J. Jul. 12, 2007).

46.     Payment of a breakup fee is therefore allowable if it enhances competitive bidding or serves as a catalyst for other bids that would not otherwise have been made and, without which, bidding would have been curtailed. O'Brien, 181 F.3d at 537.

47.     In this case, the Debtors willingness to agree to the Break-Up Fee and Expense Reimbursement provisions of the Carpenter APA enabled the Debtors to procure Carpenter as a stalking horse and should act as a catalyst for a competitive bidding process by drawing in other offers and by establishing a minimum purchase price for the Assets.

19

48.     Furthermore, the amount of the Break-Up Fee and Expense Reimbursement provisions of the Carpenter APA, which total 4.5% of the Purchase Price, are generally consistent with the amount of termination fees approved in other cases in this and other districts. See, e.g., In re Apex Silver Mines, Ltd., Case No. 09-10182 (JMP) (Bankr. S.D.N.Y. Jan. 30, 2009) (approving a breakup fee of approximately 4.51%); In re Global Motorsport Group, Inc., Case No. 08-10192 (KJC) (Bankr. D. Del. Feb. 14, 2008) (approving breakup fee of approximately 4%).

## C.     The Sale of the Debtors' Assets is a Sound Exercise of the Debtors' Business Judgment

49.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1).

50.     Although section 363 of the Bankruptcy Code does not articulate a particular standard to determine when a court should authorize a sale of the debtors' assets outside of the ordinary course of business, courts in this and other Circuits have authorized a pre-confirmation sale of the debtors' assets if the debtors demonstrate a sound business justification for the sale. See e.g., In re Montgomery Ward Holdings, Corp., 242 B.R. 147. 153 (D. Del. 1999); In re Delaware & Hudson Railway Co., 124 B.R. 169, 175-76 (D. Del. 1991); In re Lionel Corp., 722 F.2d 1063, 1068-69 (2d Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Titusville County Club, 128 B.R. 396, 399 (Bankr. W.D. Pa.1991).

51.     In this case, the Debtors' decision to sell substantially all of their assets is amply supported by a sound business purpose. The Debtors have determined that they lack the capacity to effectuate a stand-alone reorganization in the present economic environment, and, given the uncertainty associated with the Debtors' ability to continue financing their postpetition

20

operations, the Debtors' decision to seek a prompt sale of their assets is necessary to preserve the going concern value of those assets. Indeed, in the absence of a prompt sale, the Debtors anticipate that the value of their assets will continue to decline.

52.    The Debtors and their financial advisors have carefully reviewed their options with respect to the Assets and have determined that the proposed sale to Carpenter and auction of the Remaining Assets is the best available alternative for maximizing the value of the Debtors' estates for the benefit of their creditors. More specifically, the Debtors believe that the Purchase Price under the Carpenter APA, coupled with the anticipated proceeds that will be generated by the sale of the Remaining Assets, is more than the Debtors would expect to receive if the Assets were to be sold pursuant to an orderly liquidation.

53.    For the foregoing reasons, the Debtors submit that they have demonstrated a sound business justification and otherwise meet the requirements for a sale of assets outside the ordinary course of business. Accordingly, the Debtors respectfully request that the Court approve the proposed Sale Procedures.

**D.    Carpenter Is a Good Faith Purchaser Within the Meaning of Section 363(m)**

54.    The Debtors request that the Court find that Carpenter, or the Successful Purchaser(s), as applicable, have purchased the Assets in good faith pursuant to 11 U.S.C. § 363(m) and have not violated the prohibitions of 11 U.S.C. § 363(n).

55.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of Property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such Property in good faith, whether or not such entity knew of the pendency of the

21

583175.1 8/24/09

appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

56.    Section 363(n) of the Bankruptcy Code provides, in relevant part, that:

The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount.

11 U.S.C. § 363(n).

57.    Under the law of this circuit, the good faith inquiry focuses on the integrity of the purchaser's conduct during the course of the sale proceedings. In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); In re Tempo Tech. Corp., 202 B.R. 363, 367 (D. Del. 1996)

58.    In this case, the Carpenter APA was negotiated in good faith and at arms length over a period of several weeks. Carpenter is not an insider of the Debtors, and has not entered into any agreements with or made any promises to the Debtors' existing management team regarding future employment. Furthermore, the Debtors are not aware of any information that would suggest that Carpenter has engaged in any collusive conduct of the kind prohibited by section 363(n) of the Bankruptcy Code.

59.    The Debtors respectfully submit that the Carpenter has conducted itself throughout the sale process in good faith as contemplated by 11 U.S.C. §363(m) and is, therefore, entitled to the protections of that provision, together with a finding that there has been no violation of the requirements of 11 U.S.C. § 363(n).

22

**E.     The Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances is Authorized Under 11 U.S.C. § 363(f)**

60.     Section 363(f) of the Bankruptcy Code provides:

(f)     The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

    (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2)     such entity consents;

    (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property;

    (4)     such interest is in bona fide dispute; or

    (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

61.     Because section 363(f) of the Bankruptcy Code is written in the disjunctive, the satisfaction of any of the requirements enumerated in that provision suffices to permit the sale of the Assets free and clear of all liens, claims, rights, interests or encumbrances as provided in the APA. See, e.g., Citicorp Homeowners Servs., Inc. v. Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988); In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002).

62.     Therefore, if any of the five conditions set forth in subsections (f)(1) – (5) are met, the Debtors are entitled to sell the Assets free and clear of liens under section 363(f) of the Bankruptcy Code. In re Westgate, No. 07-17091, 2008 WL 3887607, at *2 (Bankr. D.N.J. Aug. 19, 2008).

63.     In this case, the Debtors believe that one or more of the tests set forth in section 363(f)(1)-(5) apply with respect to the Sale of its Assets pursuant to the APA. The Debtors,

23

therefore, request authority to sell the Assets to Carpenter or the Successful Purchaser(s), as appropriate, free and clear of all liens, claims, encumbrances and interests.

64.    Specifically, the Debtors submit that any liens or encumbrances on their assets: (i) will be released by consent of the affected creditors (i.e. the Lenders); (ii) will be satisfied out of the proceeds of the sale; or (iii) could be compelled to accept a monetary satisfaction in a legal or equitable proceeding (e.g., a foreclosure sale by the Lenders).

65.    Although section 363(f) provides for a sale free and clear of "any interests," the term "interest" is not defined in the Bankruptcy Code even though the terms "claim" and "lien" are identified. See 11 U.S.C. §101(5) and 101(37); see also Folger Adam Security v. DeMatteis/MacGregor, JV, 209 F.3d 252, 259 (3d Cir. 2000). While some courts have interpreted the term "any interest" restrictively to refer solely to *in rem* interests in property, the recent trend in this circuit and elsewhere is towards a "broader interpretation which includes other obligations that may flow from ownership of the property." Id. at 258; In re Trans World Airlines, Inc., 322 F.3d 283, 288-89 (3d Cir. 2003); Precision Indus., Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537, 545 (7th Cir. 2003).

66.    The seminal opinion by the Fourth Circuit, In re Leckie Smokeless Coal Company, 99 F.3d 573, 581-82 (4th Cir. 1996), held that the scope of section 363(f) is not restricted to *in rem* interests only but also allowed courts to authorize sales free and clear of any successor liability claims that may arise from such interests.

67.    Following the lead of the Fourth Circuit in Leckie Smokeless, in TWA, the Third Circuit held that a debtor could sell their assets free and clear of successor liability for employment discrimination claims brought against the debtor because the claims arose from the

24

property being sold and, therefore, constituted "interests in such property" within the meaning of section 363(f) of the Bankruptcy Code. TWA, 322 F.3d at 288-89.

68. In this case, Carpenter is providing substantial and valuable consideration for the Debtor's Assets based, at least in part, on this Court's ability to ensure that Carpenter will not be subject to liability for any claims relating to pre-sale conduct of the Debtors. Accordingly, the Debtors respectfully request that this Court authorize a sale of the Debtors' Assets to Carpenter, or another Successful Purchaser, free and clear of all "interests," including, without limitation, all successor liability claims.

## F. The Court Should Authorize the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Stalking Horse or Successful Purchaser

69. Pursuant to the APA, the Debtors request approval of the assumption of the Assigned Contracts to Carpenter upon the closing of the transactions contemplated in the Carpenter APA or, alternatively, to the Successful Purchaser upon the closing of the applicable Modified APA.

70. Section 365(a) of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

71. Section 365(f)(2) of the Bankruptcy Code provides, in relevant part:

(2) the trustee may assign such contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

25

> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

72.     Section 365(b)(1) of the Bankruptcy Code sets forth the requirements for

assuming an unexpired lease or executory contract of the Debtors by providing:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default . . .
>
> (B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

73.     The Third Circuit has adopted the business judgment rule in reviewing a debtor's

decision to assume or reject an executory contract.  Sharon Steel Corp. v. Nat'l Fuel Gas

Distribution Corp., 872 F.2d 36, 39-40 (3d Cir. 1989); In re Nickels Midway Pier, LLC, 341

B.R. 486, 493 ( D.N.J. 2006); In re Network Access Solutions Corp., 330 B.R 67 (Bankr. D. Del.

2005).  A debtor meets the business judgment test when it determines, in good faith, that the

assumption or rejection of an executory contract will benefit the estate and unsecured creditors.

Sharon Steel, 872 F.2d at 49; In re Central Jersey Airport Servs., LLC, 282 B.R. 176 (Bankr.

D.N.J. 2002).

26

74.    The assumption and assignment of the Assigned Contracts, as set forth in the Carpenter APA, is a necessary component of the bargain that the Debtors, in the exercise of their sound business judgment, have reached with Carpenter, and will benefit the Debtors' estates and its creditors.

75.    Moreover, the counterparties to the Assigned Contracts will have ample time to file an objection to any proposed cure amounts set forth in the Cure Schedule. To the extent no cure objection is timely filed on or before the Assumption Objection Deadline, the proposed cure amount will be binding on the applicable counterparty to the Assigned Contracts. The payment of the cure amounts set forth in the Cure Schedule, which will be filed and served with the Sale Hearing Notice, or any different amounts that may be designated by this Court or by consent of the parties, shall be in full and final satisfaction of all obligations of the Debtors and the Successful Purchaser to cure defaults and will compensate the non-debtor counterparties to the Assigned Contracts for any pecuniary losses under such contracts or leases.

76.    The sale to Carpenter (or any other Successful Purchaser) will also provide all parties with adequate assurance of future performance to the extent required in connection with the assumption and assignment of any Assigned Contracts.

77.    The phrase "adequate assurance of future performance" as used in section 365 of the Bankruptcy Code is interpreted in light of the facts and circumstances of each case and is given a "practical, pragmatic construction." Cinicola v. Scharffenberger, 348 F.3d 110, 120 n.10 (3d Cir. 2001); In re DBSI, Inc., 405 B.R 698, 708 (Bankr. D. Del. 2009).

78.    Adequate assurance may be provided by, for example, demonstrating the financial health and experience of the Stalking Horse or Successful Purchaser in running the type of property assigned or meeting the monetary obligations required under the contract in the future.

27

See, e.g., In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986); In re Vitanza, No. 98-19611 (DWS), 1998 WL 808629, at *27 (Bankr. E.D. Pa. Nov. 13, 1998).

79.     The Debtors intend to offer evidence at the Sale Hearing of Carpenter's, or the Successful Purchaser's, willingness and ability to render future perform under the Assigned Contracts. The Sale Hearing will thus provide the Court and any objecting parties with the opportunity to challenge the ability of the Successful Purchaser to provide adequate assurance of future performance under the Assigned Contracts.

80.     For these reasons, the Debtors request that the Court authorize the Debtors to assume and assign the Assigned Contracts as contemplated by the Carpenter APA or, alternatively, by any applicable Modified APA.

## Request for Waiver of the 10 Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)

81.     If the Carpenter APA closes by September 30, 2009, the maximum amount of post-closing adjustments that can be claimed by Carpenter based on the depreciation of the value of the Debtors' inventory and receivables is $1.6 million. (Carpenter APA, §§ 2.4(c) and 11.1 (definition of "Withheld Amount"). If closing is delayed until October 15, 2009, the cap on post-closing adjustments increases to $2 million. And, if the closing is delayed until October 31, 2009, the cap on post-closing adjustments increases again to $2.5 million.

82.     The Debtors' estates thus have a concrete financial incentive to close the sale to Carpenter as quickly as possible, and respectfully request that the Court waive the ten (10) day stay requirement imposed by Bankruptcy Rules 6004(h) and 6006(d) to allow the Sale to close immediately after entry of the Sale Order.

## Notice

83.     Notice of this Motion has been provided to: (a) the U.S. Trustee for the District of Delaware, (b) counsel to the Debtors' pre-petition lenders, (c) counsel to the Creditor's Committee, (d) all parties that have requested notice pursuant to Bankruptcy Rule 2002, and (e) all parties with known liens, claims, encumbrances and interests in the Debtors' Assets. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

## No Previous Request

84.     No previous request for the relief requested in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter: (I) an order (the "Sale Procedures Order"), substantially in the form submitted herewith (a) approving the Sales Procedures, substantially in the form annexed hereto as Exhibit A, (b) approving payment of the Break-Up Fee and Expense Reimbursement provisions of the Carpenter APA, (c) scheduling a Sale Hearing; (d) approving the Auction Notice, substantially in the form annexed hereto as Exhibit C, (e) approving the Sale Hearing Notice, substantially in the form annexed hereto as Exhibit D; and, following the Sale Hearing, (II) enter an Order (the "Sale Order"), substantially in the form annexed hereto as **Exhibit E**, (a) approving the Carpenter APA (or such other Modified APA as may have been determined to be the Successful Bid at the Auction), (b) authorizing a sale of the Debtors' Assets free and clear of all liens, claims, encumbrances and interests pursuant to sections 363(b), (f) and (m) of the Bankruptcy Code, (c) authorizing the assumption and assignment of the Assigned Contracts to the Successful Purchaser, and (d) granting such other or further relief as the Court deems just and proper.

29

Dated: August 24, 2009

Respectfully submitted,

K&L GATES LLP
Jeffrey N. Rich
Eric T. Moser
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

K&L GATES LLP
David A. Murdoch
535 Smithfield Street
Pittsburgh, PA 15222
Telephone: (412) 355-6500
Facsimile (412) 355-6501

and

SAUL EWING LLP
Mark Minuti (Bar No. 2659)
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-6813
ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION