## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| CRUCIBLE MATERIALS CORPORATION, *et al.*,[1] ) | Case No. 09-11582 (MFW) |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | Re: Docket No. 348 |

### ORDER AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND GRANTING RELATED RELIEF

Upon consideration of the motion (Docket No. 348) (the "Motion") of Crucible Materials

Corporation and Crucible Development Corporation, the above-captioned debtors and debtors-

in-possession (collectively, the "Debtors"), for entry of an order, among other things:

(i) approving the asset purchase agreement (substantially in the form attached hereto as **Exhibit**

**A**, the "APA") among the Debtors and Crucible Industries LLC, a successful bidder at the

Auction,[2] or its designee or designees (the "Purchaser"), (ii) authorizing the sale of the

Purchased Assets as defined by the APA[3] to Purchaser free and clear of Encumbrances (the

"Sale"), and (iii) granting other related relief; and it appearing that the relief requested in the

Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest;

and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Crucible Materials Corporation (9229); Crucible Development Corporation (3475). The Debtors' headquarters is located at 575 State Fair Boulevard, Syracuse, NY 13209.

[2] As defined in the Order (I) Approving Sales Procedures; (II) Authorizing the Debtors to Grant Certain Bid Protections; (III) Scheduling a Hearing to Consider the Sale of Substantially All of the Debtors' Assets; and (IV) Approving the Form and Manner of Notices Related Thereto (Docket No. 365) (the "Sales Procedures Order").

[3] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the APA.

1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and adequate notice of the Motion and opportunity for objection having been given, and all objections to the relief requested in the Motion having been withdrawn or overruled; and this Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing before this Court on September 25 2009 (the "Sale Hearing"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:[4]**

### Jurisdiction, Final Order and Statutory Predicates

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).   Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

584955.1 9/25/09

delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.    The statutory predicates for the relief requested in the Motion are sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

D.    This Court entered the Procedures Order on August 31, 2009 (Docket No. 365).

**Notice of the Sale, and Auction**

E.    Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested Persons[5] and entities, including, but not limited to the following parties:

1.    the United States Trustee;

2.    counsel to the Official Committee of Unsecured Creditors (the "Committee");

3.    counsel to Wachovia Capital Finance Corporation, as agent (the "Agent") for the prepetition and postpetition secured lenders (the "Lenders");

4.    all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service;

5.    the United States Department of Justice;

6.    all parties that have requested special notice pursuant to Bankruptcy Rule 2002;

7.    all Persons known or reasonably believed to have asserted an Encumbrance on any of the Purchased Assets;

8.    all litigants or known potential litigants against the Debtors;

---

[5]    As defined in 11 U.S.C. § 101(41).

3

9. all Persons known or reasonably believed to have expressed an interest in acquiring the Purchased Assets;

10. the Attorney General in the State(s) where the Purchased Assets are located;

11. The United States Attorneys Office for the District of Delaware;

12. the Pension Benefit Guaranty Corporation;

13. the United States Environmental Protection Agency;

14. any applicable state environmental agency; and

15. all known creditors of the Debtors.

F. The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sales process, including, without limitation: approval and authorization to serve the Sale Notice (as defined in the Procedures Order).

G. The Sale Notice provided all interested parties with timely and proper notice of the Sale, Sale Hearing and Auction.

H. As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, Auction, Sale Hearing, and Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the Motion, Auction, Sale Hearing, and Sale required by the Procedures Order. The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, Auction, Sale Hearing, Sale, is required.

I. The disclosures made by the Debtors concerning the APA, Auction, Sale, Sale Hearing, were good, complete and adequate.

4

## Good Faith of the Purchaser

J.    The Purchaser meets all of the requirements for a Qualified Bidder.

K.    The Purchaser submitted a cash deposit equal to $200,000 on September 16, 2009, which is currently held by Wilmington Trust Company (the "Good Faith Deposit"). At the Closing, the Good Faith Deposit of the Purchaser shall be applied to the amount of its Successful Bid and the Purchaser shall remit the remaining balance of its Successful Bid in accordance with this Order.

L.    The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

M.    The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser complied with the provisions in the Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Procedures Order; (iv) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (v) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (vi) no common identity of directors or controlling stockholders exists between the Purchaser and any of the Debtors; and (vii) the negotiation and execution of the APA was at arms' length and in good faith.

5

## Highest and Best Offer

N.      The Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Procedures Order. The auction process set forth in the Procedures Order, afforded a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The Auction was duly noticed and conducted in a noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

O.      The APA constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

P.      The APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of the Debtors' chapter 11 cases (the "Chapter 11 Cases"). No other Person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Purchaser.

Q.      Approval of the Motion and the APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

R.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

584955.1 9/25/09

## No Fraudulent Transfer

S.     The consideration provided by the Purchaser pursuant to the APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof and the District of Columbia.

T.     The Purchaser is not a mere continuation of the Debtors or their estates and there is no continuity between the Purchaser and the Debtors. The Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors. The sale of the Purchased Assets to the Purchaser is not being undertaken for the purpose of escaping liability for the Debtors' debts.

## Validity of Transfer

U.     The Debtors have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

V.     The transfer of each of the Purchased Assets to the Purchaser will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Encumbrances accruing, arising or relating thereto any time prior to the Closing Date, except for any Permitted Encumbrances under the APA.

## Section 363(f) Is Satisfied

W.     The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Purchaser, were

7

not free and clear of all Encumbrances of any kind or nature whatsoever (except the Permitted Encumbrances), or if the Purchaser would, or in the future could be, liable for any of such Encumbrances.

X. The Debtors may sell the Purchased Assets free and clear of all Encumbrances against the Debtors, their estates or any of the Purchased Assets (except for the Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances against the Debtors, their estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders, if any, of such Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, in each instance against the Debtors, their estates or any of the Purchased Assets, attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

### Compelling Circumstances for an Immediate Sale

Y. To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, and to reduce the amount of postpetition debtor-in-possession financing borne by the Debtors, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the APA. Time is of the essence in consummating the Sale.

8

Z.　Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the purchase price under the APA, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

AA.　The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(a), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.　The relief requested in the Motion is granted and approved, and the Sale contemplated thereby and by the APA is approved as set forth in this Order.

2.　This Court's findings of fact and conclusions of law set forth in the Procedures Order are incorporated herein by reference.

3.　All objections to the Motion or the relief requested therein, to the extent not previously withdrawn, are hereby overruled.

### Approval of the APA

4.　The APA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5.　Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized, empowered and directed to (a) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the APA, (b) close the Sale as

9

contemplated in the APA and this Order, and (c) execute and deliver, perform under, consummate, implement and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

6.      This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any Claims (as defined herein) (whether known or unknown) against any Debtor, any holders of Encumbrances against or on all or any portion of the Purchased Assets, all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, and trustees, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and their respective successors and assigns.

## Transfer of the Purchased Assets

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser "as is where is" in accordance with the APA upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets. Upon Debtors' and Agent's receipt of the Purchase Price in accordance with this Order, the Purchased Assets shall be free and clear of all Encumbrances except any Permitted Encumbrances. On the Closing Date, the Purchaser shall take title to and possession of the Purchased Assets subject only to any Permitted Encumbrances. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets,

10

including but not limited to the Assumed Contracts, shall be free and clear of any and all Encumbrances, including Encumbrances (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' interests in the Purchased Assets, or any similar rights, (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, and (iii) relating to or arising under (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (B) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as defined in section 101(5) of the Bankruptcy Code, "Claims"), obligations, liabilities, demands, guaranties, options, rights of any kind or nature, including setoff, subrogation or recoupment, contractual or other commitments, indemnities, indemnity obligations and warranties relating to any acts, omissions or circumstances arising prior to the Closing Date, including those constituting Excluded Liabilities, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to Claims otherwise arising under doctrines of successor liability or any Claims or Encumbrances related to the Excluded Assets or the Excluded Liabilities; except for Permitted Encumbrances, and shall be free and clear of any and all Claims, including, without limitation, any and all Claims pursuant to any successor or successor-in-interest liability theory; *provided, however*, that the

11

Purchaser shall not be relieved of liability with respect to the Assumed Liabilities. All Encumbrances shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

8.      Except as expressly permitted or otherwise specifically provided by the APA or this Order, on and after the Closing Date, all Persons and entities holding Encumbrances or interests in all or any portion of the Purchased Assets (other than Permitted Encumbrances) arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets prior to the Closing Date, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the Purchased Assets, such Persons' or entities' Encumbrances in and to the Purchased Assets. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Encumbrances (except the Permitted Encumbrances) on the Purchased Assets, if any, as provided for herein, as such Encumbrances may have been recorded or may otherwise exist. The transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business. Upon consummation of the transactions set forth in the APA and the receipt by Agent of the proceeds of the Sale of the Purchased Assets in accordance with this Order, the Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise

12

notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

9. All Persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the APA and this Order.

10. All Persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee on the Closing Date.

11. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Encumbrances of record except the Permitted Encumbrances.

12. If any Person or entity which has filed statements or other documents or agreements evidencing Encumbrances on, interests in, all or any portion of the Purchased Assets shall not have delivered to the Debtors on or prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Encumbrances, which the Person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such Person or entity with respect to the Purchased Assets.

13

13. This Order is and shall be binding upon and govern the acts of all Persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in property, including any leased property or lease; and each of the foregoing Persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

## Other Provisions

14. Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to this Court with respect to a specific matter, all Persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the Purchased Assets, with respect to any (a) Encumbrance (other than a Permitted Encumbrance) arising under, out of, in connection with or in any way relating to the Debtors, the Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties; (iii) creating, perfecting

14

or enforcing any Encumbrance against the Purchaser, its successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

15.     With respect to property that is owned or operated by any entity after the date of entry of this Order, nothing in this Order or the Asset Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of such property. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment to Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Purchaser's complying with all applicable legal requirements under bankruptcy and non-bankruptcy law governing such transfers or assignments.

16.     Except for the Permitted Encumbrances and Assumed Liabilities or as otherwise expressly set forth in this Order, the APA, or any other document or agreement executed and/or delivered in further of or in connection with the transactions contemplated by the APA, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the APA, the Purchaser shall not be liable for any

15

Claims against the Debtors or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of (i) Claims arising under the Employee Retirement, Income, Security Act of 1974, as amended, and Claims arising under the Fair Labor Standards Act, (ii) Claims arising under Title VII of the Civil Rights Act of 1964, (iii) Claims arising under the Coal Industry Retiree Health Benefit Act of 1992, (iv) Claims arising under the Federal Rehabilitation Act of 1973, (v) Claims arising under the National Labor Relations Act, (vi) Claims arising under the Worker Adjustment and Restraining Act of 1988, (vii) Claims arising under the Age Discrimination and Employee Act of 1967, or (viii) Claims arising under the Consolidated Omnibus Budget Reconciliation Act of 1985; (ix) any products liability or similar Claims, whether pursuant to any state or federal laws or otherwise, including without limitation, any Claims related to the Excluded Assets; (x) Claims arising under any bulk sales or similar law; (xi) any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing; and (xii) environmental Claims arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.*, or similar state statute. The Purchaser has given substantial consideration under the APA for the benefit of

16

the holders of any Encumbrance. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Encumbrances against or interests in the Debtors or any of the Purchased Assets.

17.    The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts). The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

18.    Notwithstanding anything to the contrary contained herein, in the APA or otherwise, the Debtors shall, and are hereby authorized and directed to, remit or cause to be remitted on the Closing Date all proceeds payable to Debtors from the Sale of the Purchased Assets pursuant to the APA as follows:

(a) the amount of $400,000 shall be paid to Duff and Phelps as full and final payment of all fees and expenses payable to Duff and Phelps, including any "Transaction Fee", in respect of the Sale of the Purchased Assets pursuant to the APA;

(b) the amount of $2,723,331 shall be paid to Onondaga County, New York as full and final payment and satisfaction of the 9.875% Industrial Revenue Bond issued by Onondaga County, New York, having a maturity date of October 10, 2010; and

(c) all remaining proceeds payable to Debtors from the Sale of the Purchased Assets pursuant to the APA shall be paid to Agent for application to the Obligations of Debtors to Agent and Lenders in accordance with the terms of the Financing Order. For purposes of this Sale Order, the term "Financing Order" shall mean the Final Order (A) Authorizing Debtors To Obtain Post-Petition Financing And Grant Security Interests And Superpriority Administrative Expense Status, Pursuant to 11 U.S.C. §§ 105 and 364(c); (B) Modifying The Automatic Stay, Pursuant to 11 U.S.C. § 362; (C) Authorizing Debtors To Enter Into Agreements

17

**With Wachovia Capital Finance Corporation (New England), As Agent For Itself And Certain Other Lenders**, entered by this Court on June 8, 2009.

19.     Notwithstanding anything to the contrary herein, any liens held by Arlington ISD in the Purchased Assets for any pre or post-petition taxes payable by Debtors under Texas law (the "Texas Liens") shall attach to the cash proceeds attributable to such Purchased Assets, in the same order of priority, with the same validity, force and effect that such Texas Liens had immediately prior to the Sale under Texas Law and applicable bankruptcy law.

20.     The terms of the APA do not include the assumption and/or assignment of any executory contracts; accordingly, Purchaser shall bear no obligations for cure costs.

21.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the APA or the terms of this Order.

22.     Those of the Debtors' employees who may be hired by the Purchaser are being hired under new employment contracts or other arrangements to be entered into or to become effective at or after the Closing. The Purchaser shall not be responsible for any liabilities of the Debtors' employees arising prior to the Closing.

23.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

24.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

584955.1 9/25/09

25. There are no brokers for the Debtors involved in consummating the Sale and no brokers' commissions are due from the Debtors other than to Duff and Phelps Securities, LLC.

26. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APA be authorized and approved in its entirety.

27. The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

28. This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

29. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall govern.


Dated: September 25, 2009
       Wilmington, Delaware


                              The Honorable Mary F. Walrath
                              United States Bankruptcy Judge


19